UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PATRICIA FINN,                                          :
                Plaintiff,              :
                                    :     **<u>MEMORANDUM DECISION</u>**
v.                                                      :
                                    :     12 CV 5742 (VB)
GLORIA J. ANDERSON, individually and in                 :
her capacity as Staff Counsel to the Grievance          :
Committee for the Ninth Judicial District,              :
                    Defendant.              :
------------------------------------------------------------x

<u>Briccetti, J.</u>:

       Plaintiff Patricia Finn, proceeding <u>pro se</u>, brings this action under 42 U.S.C. §§ 1983,

1985 and 1988, against defendant Gloria J. Anderson, alleging harassment and a conspiracy to

violate plaintiff's First, Fourth, and Fourteenth Amendment rights under the United States

Constitution.  Finn also brings state law claims for intentional infliction of emotional distress and

<u>prima facie</u> tort.

       Now pending is defendant's motion to dismiss the amended complaint under Rules

12(b)(1) and (6).  (Doc. #20).  For the following reasons, the motion is GRANTED.

       The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

**BACKGROUND**

       For purposes of deciding a motion to dismiss for failure to state a claim, the Court

accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences

in favor of plaintiff.  For purposes of ruling on a motion to dismiss for lack of subject matter

jurisdiction, the Court does not draw jurisdictional inferences in favor of plaintiff, but may refer

to evidence outside the pleadings.  <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000).

       Unless otherwise indicated, the following facts are drawn from the allegations of the

amended complaint.

1

I.     Parties To This Dispute

Plaintiff Patricia Finn was at all relevant times an attorney admitted to practice in New York State.

Defendant Gloria J. Anderson was at all relevant times Staff Counsel to the New York State Grievance Committee for the Ninth Judicial District (the "Grievance Committee").

Section 90 of New York's Judiciary Law provides, in pertinent part, that "the appellate division of the supreme court in each department is authorized to censure, suspend from practice or remove from office any attorney . . . admitted to practice who is guilty of professional misconduct."  To carry out these duties, the four departments of the Appellate Division have each appointed one or more grievance committees to investigate and prosecute matters involving alleged attorney misconduct.  See Redlich v. Ochs, 2011 WL 754028, at *1, n.2 (N.D.N.Y. Feb. 24, 2011) (citing 22 N.Y. Comp. Codes R. & Regs. §§ 603.4, 691.4, 806.3, 1022.19).  The Grievance Committee for the Ninth Judicial District, for which defendant works, is one of three grievance committees in the Second Department.  See 22 N.Y. Comp. Codes R. & Regs. § 691.4(a).

The Grievance Committee is empowered to conduct investigations of professional misconduct sua sponte or upon receipt of a complaint.  22 N.Y. Comp. Codes R. & Regs. §§ 691.4(c).  As a result of such investigation, and upon a majority vote of the full committee, the committee may (1) dismiss the complaint, (2) issue a letter of caution, (3) privately admonish the attorney, (4) serve written charges and hold a hearing, or (5) recommend the Appellate Division institute disciplinary proceedings.  See id. § 691.4(e).  An admonished attorney may seek reconsideration by the Grievance Committee, id. § 691.6(a), or appeal to the Appellate Division. See Paladin v. Finnerty 104 F.3d 356 (2d Cir. 1996) (citing N.Y. Jud. Law § 90(6)).

According to the amended complaint, this action arises from defendant's on-going conspiracy with "others" to deprive plaintiff of her due process rights with respect to her law license and a New York State Fee Dispute Resolution Program proceeding, and to deprive plaintiff of her equal protection rights with respect to plaintiff's marriage.

II.     Disciplinary Proceedings

      A.     Investigation (November 2008)

In November 2008, plaintiff's estranged husband contacted defendant regarding plaintiff and her law practice.  Plaintiff alleges her husband made false and malicious allegations against plaintiff as part of a scheme to retaliate against plaintiff for commencing a legal action against him.

Defendant responded to plaintiff's husband by sending him a brochure entitled, "How to File a Grievance Against an Attorney."  Thereafter, defendant began communicating with plaintiff's husband regarding plaintiff's personal life as part of the alleged conspiracy to deprive plaintiff of her law license.

Defendant allegedly first contacted plaintiff a year later, in the fall of 2009, at which time defendant telephoned plaintiff to express "serious concerns" defendant had about plaintiff and plaintiff's work.  Defendant did not divulge that she was communicating with and "involved with" plaintiff's husband.

According to the amended complaint, plaintiff provided "uncontroverted proof" to defendant that the allegations made during her investigation were false, but defendant "overlooked the evidence" and recommended "excessively harsh and false grievance findings" be imposed against plaintiff.

B.    Admonishments (March to April 2010)

Apparently, plaintiff was ultimately admonished by the Grievance Committee as a result of defendant's investigation and recommendations.  On March 1, 2010, defendant allegedly telephoned plaintiff and informed plaintiff that she needed to attend a Grievance Committee meeting on March 18, 2010, to "pick up her private letters of admonition."

Plaintiff attended the meeting, and defendant delivered two letters of admonition to plaintiff just prior to the start of the meeting.  One letter concerned client education, the other concerned civil rights.  Plaintiff alleges the letters were delivered in this manner, as opposed to being sent by mail in advance of the meeting, to "overwhelm and terrorize" plaintiff before she entered the committee meeting room.

According to the amended complaint, each letter contained findings of misconduct, which plaintiff claims were all inaccurate.  Plaintiff, in fact, denied any wrongdoing at the meeting, refuted the false findings against her, and informed the committee that she intended to appeal.

The amended complaint alleges that when plaintiff finished speaking, defendant, who was also present at the meeting, told plaintiff she did not like plaintiff's "tone."  At the conclusion of the meeting, defendant allegedly escorted plaintiff to the door and "angrily grabbed Plaintiff by her arm, and threatened her, in a hushed voice stating, that if Plaintiff appealed, [the] Grievance Committee would refer the matter to the Appellate Division for the Second Department for 'higher charges' and more 'severe discipline.'"

Nineteen days later, on April 6, 2010, plaintiff was admonished a third time for representations plaintiff made in advertisements plaintiff had sent to a doctor's office.  The Grievance Committee determined plaintiff had lied about the number of children she represented

4

and had failed properly to label the envelope of her correspondence as "attorney advertising." Plaintiff again alleges the charges against her were false.

According to the amended complaint, despite plaintiff's belief that the findings against her were false, she did not appeal these decisions because of defendant's threat that an appeal would result in "higher charges" and more "severe discipline."

      C.     <u>Further Investigations (May 2010)</u>

According to the amended complaint, on May 4, 2010, approximately one month after plaintiff received her third letter of admonition, defendant telephoned plaintiff's husband. Plaintiff alleges defendant encouraged her husband to file another grievance against plaintiff, and a grievance was filed against plaintiff in May 2010, but the committee chose not to act on it.

Plaintiff further alleges defendant rendered legal advice and assistance to plaintiff's husband, encouraged him to photograph and record plaintiff, and obtained from plaintiff's husband confidential information from plaintiff's law office. Plaintiff alleges this information was obtained through "illegal surveillance" of her and her law office internet and telephone.

      D.     <u>Plaintiff Reargues Findings of Grievance Committee (May to July 2010)</u>

Sometime after plaintiff received the third letter of admonition, plaintiff requested the Grievance Committee reconsider their findings. They did so, and on July 9, 2010, issued another letter of admonition. According to plaintiff, "[t]he re-argued findings were modified and downgraded the severity of the content of the grievances concerning use of the retainer agreement."

III.    <u>Fee Dispute Proceedings (April to December 2010)</u>

At some point in time, one of plaintiff's former clients requested the Ninth Judicial District's Fee Dispute Program arbitrate a dispute over attorney's fees. The client obtained new

counsel, David Burger, Esq., to pursue the fee dispute.  However, according to the amended complaint, the arbitration was closed on April 19, 2010, for lack of subject matter jurisdiction.

On April 26, 2010, after plaintiff was admonished for the third time, defendant spoke with Burger, allegedly "rendering legal advice regarding reinstating his client's" fee dispute arbitration.

On April 29, 2010, defendant allegedly informed plaintiff by letter that defendant had had a conversation with Burger, but defendant did not inform plaintiff that the conversation concerned the closed arbitration or defendant's offer to speak with Nancy Barry, an attorney in the fee dispute office, about reinstating the arbitration.

Shortly thereafter, on May 5, 2010, Burger sent a letter to Barry seeking reinstatement of the closed arbitration case.  In the letter,[1] Burger explains that the fee arbitration was "supplemental to a complaint that [his client] filed with the Ninth Judicial District Grievance Committee against Ms. Finn."  Burger further communicated defendant's offer to speak directly with Barry.  Defendant was copied on the letter, but plaintiff, a party to the arbitration, was not.

That same day, Barry responded to Burger's letter, copying plaintiff but not copying defendant, and informed Burger that the arbitration would remain closed.  Plaintiff alleges defendant obtained a copy of that letter in breach of the confidentiality of the fee dispute program.

On May 20, 2010, defendant allegedly telephoned plaintiff's law office to discuss plaintiff's whereabouts on March 30, 2010, when FedEx tried to deliver a letter from Burger. Defendant accused plaintiff of "ducking the FedEx guy," although the package was received by plaintiff's receptionist.

---

[1]   The Court may review a copy of this letter submitted with plaintiff's opposition to the motion to dismiss because it is incorporated by reference in the complaint.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

Plaintiff stated she was in West Virginia at the time.  Defendant allegedly requested information to substantiate plaintiff's whereabouts including a copy of plaintiff's office floor plan showing where plaintiff sat in relation to the door, and copies of plaintiff's airline tickets and travel itinerary.  Plaintiff provided the plane tickets and travel itinerary, but not the floor plan.

At some point thereafter, defendant allegedly contacted the fee dispute office, and told them that the closed arbitration was "ripe" for arbitration.  Defendant informed both Burger and the fee dispute office that plaintiff was required to consent to the reinstatement of the closed arbitration case as a condition of the reargued findings by the Grievance Committee.

Plaintiff alleges defendant gave Burger a copy of a letter drafted by defendant but signed by the chairperson of the Grievance Committee, dated August 10, 2010, which "falsely implied that Plaintiff had to consent to 'any fee dispute' the client elects, and that the fee dispute was subject to re-opening by virtue of the findings in the [r]e-argued admonition rendered on July 9, 2010."  According to plaintiff, the August 10, 2010, letter distorts the findings stated in the July 9, 2010, letter of admonition.

Responding to this information, on November 12, 2010, Burger, by letter, demanded plaintiff consent to reinstatement of the closed arbitration.  Plaintiff did not consent.

Nonetheless, allegedly at defendant's urging, the arbitration eventually was reinstated on December 6, 2010, by Justice Alan D. Scheinkman, Administrative Judge for the Ninth Judicial District, and the arbitration ultimately was held on May 9, 2012.

Plaintiff alleges defendant was acting in her individual capacity, and not as Staff Counsel to the Grievance Committee, when defendant assisted plaintiff's former client in reinstating the closed arbitration.  Plaintiff further alleges these actions were "not done in good faith" but rather

were "designed to inflict as much emotional distress and extreme fear and terror as possible on the Plaintiff who defendant was investigating and prosecuting."  Plaintiff alleges defendant was motivated to reinstate the fee dispute by animus toward and bias against plaintiff as a result of defendant's alleged "on-going inappropriate relationship with [plaintiff's] estranged husband." According to the amended complaint, all of these acts were part of the alleged conspiracy to get plaintiff disbarred, to injure plaintiff in her matrimonial action in state Supreme Court and Family Court, and to violate plaintiff's civil rights.

IV.    Family Court Proceedings (May to June 2010)

        According to the amended complaint, on May 6, 2010, plaintiff commenced divorce proceedings against her husband, and Judge William Warren in Rockland County Family Court thereafter issued an order restraining plaintiff's husband from harassing plaintiff.

        Plaintiff alleges defendant acted as matrimonial counsel to plaintiff's estranged husband by rendering him legal advice and assistance in applying for in forma pauperis status and in obtaining pro bono counsel.  Specifically, defendant allegedly influenced the appointment of a particular attorney, Mitchell Y. Cohen, Esq., who had previously declined to represent plaintiff's estranged husband.  This appointment was made on June 14, 2010, by Justice Scheinkman.

        As previously noted in connection with defendant's investigations for purposes of the ongoing grievance proceedings against plaintiff, in May 2010, defendant allegedly obtained certain confidential information from plaintiff, including her March 30, 2010, travel itinerary. Plaintiff alleges defendant shared this information with plaintiff's estranged husband to injure plaintiff in her matrimonial proceedings.

Also in May 2010, plaintiff alleges, on information and belief, that defendant encouraged plaintiff's husband to contact and file claims against plaintiff with the police and child protective services to cause her further injury in their matrimonial proceedings.

On June 14, 2010, when counsel was assigned to plaintiff's estranged husband, the amended complaint alleges defendant and plaintiff's estranged husband spoke and plotted to further injure plaintiff using information obtained through illegal surveillance of plaintiff's telephone communications with "a staff member."

Plaintiff alleges defendant's actions were taken in her individual capacity and were motivated by her personal animus toward plaintiff because of defendant's "inappropriate relationship" with plaintiff's estranged husband.  Again, these actions were allegedly taken as part of the conspiracy to see plaintiff disbarred.

V.      Further Disciplinary Charges (November 2011 to February 2012)

At some point, plaintiff commenced an Article 78 proceeding by order to show cause challenging the administrative decision to reopen the fee dispute arbitration.  According to the complaint, plaintiff alleged the administrative decision was made in error because the dispute was time-barred and there was no subject matter jurisdiction.  Plaintiff sought to enjoin the fee dispute.  In her submissions in the Article 78 proceeding, plaintiff further alleged that the July 9, 2010, letter of admonition "downgraded" the findings previously made against plaintiff.  Plaintiff used the word "downgraded" because the July 9, 2010, findings modified in plaintiff's favor the previous findings against her.

By order dated October 10, 2011, the court rejected plaintiff's order to show cause, and dismissed the verified petition.  (See Meier Declaration, dated Oct. 19, 2012, Ex. B).

Thereafter, on or about November 2, 2011, defendant served plaintiff with additional disciplinary charges concerning plaintiff's submissions in the Article 78 proceeding.

Specifically, defendant alleged plaintiff misrepresented the Grievance Committee's July 9, 2010, findings when plaintiff described them as "downgraded."  Defendant further alleged the Article 78 petition was filed to harass plaintiff's former client and demonstrated plaintiff's willful failure to comply with the July 9, 2010, Grievance Committee findings.

Plaintiff denied defendant's allegations and alleges that commencing the Article 78 proceeding was a valid exercise of her due process rights.

According to the amended complaint, in late January 2012, defendant was still in contact with plaintiff's estranged husband.  On January 24, 2012, plaintiff's estranged husband texted plaintiff the words:  "GLORIA ANDERSON 399 KNOLLWOOD ROAD, SUITE 202 WHITE PLAINS NEW YORK," and "GAME ON."

On February 17, 2012, defendant commenced further disciplinary proceedings against plaintiff seeking plaintiff's suspension from the practice of law.  Included among the charges were plaintiff's use of the word "downgraded," plaintiff's commencement of the Article 78 proceedings, and another complaint concerning advertisements.  With respect to the advertisement charges, plaintiff was asked to disclose the names and details of the "thousands of parents and children" she claimed to represent in her law practice.

Plaintiff commenced this action on July 26, 2012.

## DISCUSSION

I.   Legal Standards

A.    Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks omitted).  Once the

question of jurisdiction has been raised, plaintiff bears the burden of establishing that subject matter jurisdiction exists by a preponderance of the evidence.  See Makarova v. United States, 201 F.3d at 113.  "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff . . . but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (internal citations and quotations omitted).  The court may also refer to evidence outside the pleadings. Makarova v. United States, 201 F.3d at 113.

B.      Rule 12(b)(6)

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984) (internal quotation marks omitted).  In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."  Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

   C.   Pro Se Litigants

   Ordinarily, the Court liberally construes submissions of a pro se litigant and interprets them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted).  In particular, the Court applies the pleading rules permissively when a pro se plaintiff alleges civil rights violations.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).

   Here, however, because plaintiff is a practicing attorney who admits familiarity with commencing litigation, she is not entitled to such "special solicitude." See Parent v. New York, 485 F. App'x 500, 502-03 (2d Cir. 2012) (summary order) (attorney with twenty years of experience litigating civil rights cases was not entitled to "special solicitude"); see also Tracy v. Freshwater, 623 F.3d 90, 102 (2d Cir. 2010) (noting the degree of solicitude afforded to pro se litigants varies according to the circumstances of each litigant and case, and that "a lawyer representing himself ordinarily receives no such solicitude at all.").

II.   Eleventh Amendment Immunity

   Defendant argues plaintiff's claims are barred by the Eleventh Amendment to the extent defendant is sued in her official capacity.  The Court agrees.

   The Eleventh Amendment to the United States Constitution bars suits against states unless the state expressly waives its immunity or Congress abrogates that immunity.  See Seminole Tribe v. Florida, 517 U.S. 44, 73 (1996).  With the exception of claims for injunctive

relief to correct continuing violations of federal law, id. at 44, Eleventh Amendment immunity

extends to state officials.  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101

(1984) ("The Eleventh Amendment bars suit against state officials when the state is the real,

substantial party in interest.") (quotations omitted).  Claims that are barred by the Eleventh

Amendment must be dismissed for lack of subject matter jurisdiction.  See Henny v. New York

State, 842 F. Supp. 2d 530, 544 (S.D.N.Y. 2012) (citing Va. Office for Prot. & Advocacy v.

Stewart, 131 S. Ct. 1632, 1637 (2011), and Seminole Tribe of Fla. v. Florida, 517 U.S. at 54).

To the extent plaintiff brings her claims against defendant in her official capacity, those

claims must be dismissed because Congress has not abrogated state immunity for plaintiff's

Section 1983 claims seeking damages only.  See Napolitano v. Saltzman, 315 F. App'x 351, 351

(2d Cir. 2009) (summary order) (defendant counsel to the Grievance Committee, in his official

capacity, entitled to sovereign immunity under the Eleventh Amendment); see also Davis v. New

York, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of Section 1983 claims against

individual defendants in their official capacities); McNamara v. Kaye, 2008 WL 3836024, at *8

(E.D.N.Y. Aug. 13, 2008) (dismissing official capacity claims against Grievance Committee

counsel).

III.    Rooker-Feldman Doctrine

To the extent plaintiff's claims are brought against defendant in her individual capacity,

defendant first contends they too must be dismissed as barred under the Rooker-Feldman

doctrine because they invite the Court to review and reject prior state court judgments.[2]

The Court disagrees.

---

[2]    The Rooker-Feldman doctrine is derived from two cases: Rooker v. Fid. Trust Co., 263
U.S. 413 (1923), and Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).
Courts lack subject matter jurisdiction over claims barred under the Rooker-Feldman doctrine.

The <u>Rooker-Feldman</u> doctrine bars federal courts from hearing claims "'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 85 (2d Cir. 2005) (quoting <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005)). "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d at 85.

Here, plaintiff complains of injuries caused by defendant, not by state-court judgments. For example, all of defendant's alleged actions with respect to the fee dispute and matrimonial proceedings preceded any state court judgments issued.  Accordingly, those actions were not produced by state-court judgments.

Additionally, letters of admonition by the Grievance Committee are not the equivalent of state court judgments.  <u>Cf.</u> <u>Paladin v. Finnerty</u>, 104 F.3d 356, *1 (2d Cir. 1996) (noting "[a] letter of comment is not a disciplinary measure").  And, none of the cases cited by defendant in support of the application of the <u>Rooker-Feldman</u> doctrine applied the doctrine to injuries arising from letters of admonition, as opposed to state court judgments.  <u>See</u> <u>McKeown v. N.Y. State Comm'n on Judicial Conduct</u>, 377 F. App'x 121, 123 (2d Cir. 2010) (state court decision); <u>Zimmerman v. Grievance Comm. of the Fifth Judicial Dist.</u>, 726 F.2d 85, 86 (2d Cir.1984) (attorney disciplinary orders rendered by state courts); <u>see</u> <u>also</u> <u>Roosa v. Ochs</u>, 2010 WL 2773532, *1-2, n.1 (N.D.N.Y. July 12, 2010) (state court judgment suspending plaintiff from practice of law).

14

Accordingly, plaintiff's claims are not barred by the <u>Rooker-Feldman</u> doctrine.

IV.    <u>Absolute Quasi-Judicial Immunity</u>

Defendant further contends she is absolutely immune from plaintiff's claims.

The Court agrees that defendant enjoys absolute quasi-judicial immunity from plaintiff's claims concerning plaintiff's law license and the fee dispute arbitration, but not from claims concerning the matrimonial proceeding.

"Judges are granted absolute immunity from liability for acts taken pursuant to their judicial power and authority." <u>Oliva v. Heller</u>, 839 F.2d 37, 39 (2d Cir. 1988). Immunity protects a judge's actions taken in a judicial capacity, whether erroneous or not, and "applies even when the judge is accused of acting maliciously and corruptly." <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967). This is because immunity "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." <u>Id</u>.

Judicial "immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, <u>i.e.</u>, actions not taken in the judge's judicial capacity. . . . Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." <u>Mireles v. Waco</u>, 502 U.S. 9, 11-12 (1991) (per curiam) (internal citations omitted). "The 'clear absence of all jurisdiction' has been narrowly construed to encompass only acts taken outside the scope of all authority, as in the case of a probate judge adjudicating a criminal trial." <u>Sassower v. Mangano</u>, 927 F. Supp. 113, 120 (S.D.N.Y. 1996) (citing <u>Stump v. Sparkman</u>, 435 U.S. 349, 357 n.7 (1978)).

Absolute judicial immunity also extends to "certain others who perform functions closely associated with the judicial process." <u>See</u> <u>Oliva v. Heller</u>, 839 F.2d at 39 (internal quotations

omitted).  "In determining which persons are covered by an extension of immunity, the Supreme Court follows a functional approach, under which absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual officer."  Id. at 39 (internal quotations and alteration marks omitted).

The Second Circuit has previously determined that a Grievance Committee "in the investigation of . . . complaints and in the conduct of . . . proceedings . . . acts as a quasi-judicial body and, as such, is an arm of the Appellate Division."  Anonymous v. Ass'n of the Bar of City of N.Y., 515 F.2d 427, 433 (2d Cir. 1975); see also Doe v. Rosenberry, 255 F.2d 118, 120 (2d Cir. 1958) (work of grievance committees investigating complaints is quasi judicial).  It follows that persons working for Grievance Committees, conducting investigations and proceedings, act in a quasi-judicial capacity.  Indeed, by summary order, the Second Circuit has determined that counsel to New York State Grievance Committees are included among the others who are afforded absolute quasi-judicial immunity.  See McKeown v. N.Y. State Comm'n on Judicial Conduct, 377 F. App'x 121, 124 (2d Cir. 2010) ("Prosecutors, hearing examiners, and law clerks are eligible for absolute immunity, and those involved in preparing and adjudicating attorney discipline proceedings share analogous roles."); Napolitano v. Saltzman, 315 F. App'x at 351-52 (defendant "enjoy[ed] absolute immunity for his actions as counsel to the Grievance Committee, which are 'quasi-public adjudicatory [or] prosecutorial' in nature," quoting Barbara v. N.Y. Stock Exch., Inc., 99 F.3d 49, 58 (2d Cir. 1996)).

A.    Grievance Committee Actions

Here, plaintiff argues defendant's actions taken with respect to the fee dispute and matrimonial proceedings were taken "outside of her jurisdiction," "not a function of her role as staff counsel," and "proscribed by the Court rules."  Notably, she does not argue that defendant's

16

actions taken with respect to the Grievance Committee investigations and prosecutions of plaintiff's alleged misconduct were taken outside the scope of defendant's jurisdiction as Staff Counsel. Even were plaintiff to make such an argument, the allegations of the complaint do not support that conclusion.

The amended complaint alleges defendant conducted investigations into complaints of plaintiff's misconduct as an attorney and, within defendant's jurisdiction as Staff Counsel, made recommendations to the Grievance Committee. These actions, including allegations that in the course of these investigations defendant encouraged plaintiff's husband to record and conduct surveillance on plaintiff, were plainly taken within the scope of defendant's jurisdiction. See McKnight v. Middleton, 699 F. Supp. 2d 507, 523-24 (E.D.N.Y. 2010) (judge immune from claims that she ordered illegal wiretaps) aff'd, 434 F. App'x 32 (2d Cir. 2011); Truong v. McGoldrick, 2006 WL 1788960, at *4 (S.D.N.Y. June 27, 2006) (quasi-judicial immunity barred claims against Grievance Committee staff attorney relating to statements made in disciplinary proceedings); Thaler v. Casella, 960 F. Supp. 691, 700 (S.D.N.Y. 1997) ("receiving the complaints of plaintiffs' clients, investigating them, recommending to the Appellate Division that formal charges be brought, and cooperating with the Appellate Division in its determination of the charges," were all actions within the scope of jurisdiction as staff counsel to the Grievance Committee).

Whether those misconduct complaints originated with plaintiff's estranged husband is irrelevant. Also irrelevant are any alleged procedural or ethical violations defendant is alleged to have committed in performing her role as Staff Counsel with respect to Grievance Committee-related work. See Napolitano v. Saltzman, 315 F. App'x at 32 ("The allegation that [counsel to the grievance committee] may have violated procedural or ethical rules is irrelevant, as it is the

17

nature of the act and not the impropriety of the act that matters.").  Finally, this immunity applies whether or not defendant was "acting maliciously and corruptly."  Pierson v. Ray, 386 U.S. at 554.

Thus, defendant is immune from suit relating to her activities in connection with the misconduct investigations and prosecutions.

B.     Fee Dispute Actions

Defendant also enjoys absolute immunity for her alleged actions communicating with Burger and the fee dispute office.

The failure of an attorney to participate in fee dispute arbitrations is a punishable offense by the Grievance Committee.  See 22 N.Y. Comp. Codes R. & Regs. § 137.11 ("All attorneys are required to participate in the arbitration program established by this Part upon the filing of a request for arbitration by a client in conformance with these rules.  An attorney who without good cause fails to participate in the arbitration process shall be referred to the appropriate grievance committee of the Appellate Division for appropriate action.").  Accordingly, staff counsel may communicate with persons to investigate whether attorneys are participating in the arbitration program.

Further, defendant had reason to communicate concerning this particular fee dispute because the dispute was related to the matters defendant was already investigating on behalf of the Grievance Committee.  Specifically, the allegations of the amended complaint and documents incorporated therein by reference make clear that plaintiff's former client both filed a complaint against her to the Grievance Committee and commenced an arbitration to resolve a related fee dispute.  Thus, as Staff Counsel to the Grievance Committee, defendant's

communications with counsel for plaintiff's former client about the resolution of the complaint the client filed with the grievance committee fell within defendant's jurisdiction.

Even if defendant's communications could be considered in "excess" of her authority because she encouraged the fee dispute to be reopened rather than merely investigate whether plaintiff was complying with an obligation to arbitrate, defendant is still immune because her actions fell within her jurisdiction. See Stump v. Sparkman, 435 U.S. at 356-57 ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"); see also Sassower v. Mangano, 927 F. Supp. at 120.

C.    Matrimonial Proceedings

Defendant's alleged actions with respect to the matrimonial proceedings, however, do not fall within her jurisdiction to investigate complaints and conduct Grievance Committee proceedings.  Defendant does not cite any rules, regulations, or cases demonstrating that it is a function of Staff Counsel to Grievance Committees to assist complainants with obtaining pro bono counsel in wholly separate matrimonial or family court proceedings.  Nonetheless, as explained below, plaintiff's claims relating thereto must be dismissed for failure to state a claim.

V.    Section 1983 Equal Protection Claim

Plaintiff alleges defendant deprived her of equal protection under the law in contravention of Section 1983 when she was disciplined by the Grievance Committee[3] and when defendant assisted plaintiff's estranged husband in obtaining pro bono counsel in their matrimonial proceedings.  Plaintiff alleges she was treated differently than other similarly situated attorneys because her husband received free counsel to oppose her in their matrimonial

---

[3]    In an abundance of caution, the Court addresses all of plaintiff's equal protection claims assuming defendant were not immune from claims with respect to the Grievance Committee proceedings and fee dispute.

proceeding and defendant had an animus and bias against her. In other words, plaintiff brings a "class of one" equal protection claim.

Defendant argues plaintiff has failed to state a claim, and, even if plaintiff did state a claim, qualified immunity protects defendant from defending this claim. Because the Court finds plaintiff failed to state a claim, the Court does not reach the question of qualified immunity.

Although "the Equal Protection Clause is most commonly used to bring claims alleging discrimination based on membership in a protected class," a plaintiff who does not allege membership in a protected class may, nonetheless, bring a "class of one" equal protection claim. Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2008). "A class-of-one claim exists 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, (2000)). To state a claim, plaintiff must identify at least one individual with whom she can be compared. King v. N.Y. State Div. of Parole, 260 F. App'x 375, 380 (2d Cir. 2008) (summary order) (affirming dismissal of claim because plaintiff "failed to identify a single individual with whom he can be compared for Equal Protection purposes"); see also Neilson v. D'Angelis, 409 F.3d at 104 ("In order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high.").

Similar to plaintiff in King v. N.Y. State Div. of Parole, plaintiff fails to state a claim because she fails to identify a single comparator. More fundamentally, however, plaintiff fails to state a claim because she fails to state how she was treated differently from others, regardless of whether she named a specific comparator. Plaintiff does not, for example, state that she tried to

obtain pro bono counsel but that her application was denied.  She alleges only that but for defendant's actions she would not have needed to oppose her matrimonial proceedings and would not have been disciplined.  There is no allegation of differential treatment.  See Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d at 140 (plaintiff must allege she has intentionally been treated differently).

Plaintiff's reliance on Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499-500 (2d Cir. 2001), is misplaced.  There, the Second Circuit addressed a selective enforcement claim, and the matter turned on whether plaintiff had demonstrated he was treated differently because of "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  Id. at 499.  Here, plaintiff's claim fails because she has not plausibly alleged she was treated differently from other similarly-situated individuals.

Accordingly, plaintiff's equal protection claim is dismissed.

VI.    Section 1985 Conspiracy

Plaintiff alleges defendant conspired with the Ninth Judicial District Fee Dispute Resolution Program, the assigned matrimonial office, David Burger, and plaintiff's estranged husband to commit the above constitutional violations.

"To state a cause of action under § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States."  Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).  To plausibly allege a conspiracy, plaintiff must identify a "factual basis supporting a meeting of the minds" to achieve an unlawful end.  See Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003).

"Furthermore, the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Thomas v. Roach, 165 F.3d at 146 (internal quotation marks omitted).

Here, plaintiff fails plausibly to allege a "meeting of the minds"[4] and fails to allege any class-based animus.  The Court agrees with plaintiff that she has alleged over 83 paragraphs with many "concrete facts"; however, none of these alleged facts is adequate plausibly to allege a conspiracy claim.

Accordingly, the conspiracy claim is dismissed.

VII.   Due Process and Substantive Due Process

Even if defendant were not immune for actions taken with respect to the Grievance Committee proceedings and fee dispute proceedings, plaintiff also fails to state either a Due Process or Substantive Due Process claim.

A.      Due Process

To state a Due Process claim, plaintiff must allege she possessed a protected property interest, and that she was deprived of that interest without due process of law.  McMenemy v. City of Rochester, 241 F.3d 279, 285-86 (2d Cir. 2001).

Plaintiff fails to allege any deprivation of an interest in her law license because she alleges she received letters of admonition only.  See Paladin v. Finnerty, 104 F.3d 356 (2d Cir. 1996) (letters of caution do not deprive attorney of his right to practice law).  Further, plaintiff could have commenced an Article 78 proceeding for any perceived violation of her rights because of defendant's involvement in the Grievance Committee investigations and proceedings.

---

[4]   Indeed, in plaintiff's opposition she refers to several alleged co-conspirators as "unwitting."  (P. Opp. at 5).

See id. (affirming dismissal when plaintiff offered no explanation for his failure to pursue Article 78 remedies for perceived deprivations of his due process rights with respect to his law license).

       B.     Substantive Due Process

To assert a substantive due process claim, plaintiff must plead that (1) "a constitutionally cognizable property interest is at stake," and (2) defendant's "alleged acts . . . were arbitrary, conscience-shocking, or oppressive in the constitutional sense, not merely incorrect or ill-advised." Ferran v. Town of Nassau, 471 F.3d 363, 369–70 (2d. Cir.2006) (internal quotation marks omitted). "The protections of substantive due process are available only against egregious conduct which goes beyond merely offend[ing] some fastidious squeamishness or private sentimentalism and can fairly be viewed as so brutal and offensive to human dignity as to shock the conscience." Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dis., 298 F.3d 168, 173 (2d Cir. 2002) (internal quotation marks omitted, alterations in original) (concluding single slap to the face of student by teacher fell short of the substantive due process threshold).

Reading the complaint broadly, the only potential constitutionally cognizable property interest alleged is plaintiff's law license. However, as alleged, none of defendant's actions taken with respect to plaintiff's law license was "arbitrary, conscience-shocking, or oppressive in the constitutional sense."

Accordingly, the due process and substantive due process claims are dismissed.

VIII.   State Law Claims

Having dismissed plaintiff's federal law claims, the Court declines to exercise supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367(c)(3).

**CONCLUSION**

Defendant's motion to dismiss is GRANTED.

The Clerk is instructed to terminate the pending motion (Docs. # 20), and close this case.

Dated: September 6, 2013
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge